have failed to advance.  The IBT does not explain how Plaintiffs' representation has been lacking in vigor.  Indeed, we need only peruse Plaintiffs' brief on appeal to appreciate the thoroughness of Plaintiffs' representation.  Given the IBT's failure to identify any potential inadequacy in Plaintiffs' continued representation of the IBT's interests on appeal, along with the untimeliness of the motion, we conclude that the IBT's motion to intervene was properly denied.

For the reasons set forth above, we REVERSE the district court's order finding that Plaintiffs' remittance of attorney's fees to the IBT would constitute a prohibited transfer, and AFFIRM the district court's order denying the IBT the right to intervene in this action.

*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2000 FED App. 0105P (6th Cir.)
File Name:  00a0105p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

ROBERT JORDAN, et al.
(98-1885),
          *Plaintiffs-Appellants,*

INTERNATIONAL
BROTHERHOOD OF
TEAMSTERS, AFL-CIO
(98-2113),
               *Appellant,*

          *v.*

MICHIGAN CONFERENCE OF
TEAMSTERS WELFARE FUND,
et al.,
     *Defendants-Appellees.*

Nos. 98-1885/2113

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 96-73113—Nancy G. Edmunds, District Judge.

Argued:  September 22, 1999

Decided and Filed:  March 24, 2000

Before:  MERRITT and CLAY, Circuit Judges; ALDRICH,
District Judge.[*]

_____

**COUNSEL**

_____

**ARGUED:**  Charles R. Both, YABLONSKI, BOTH &
EDELMAN, Washington, D. C.,  Patrick J. Szymanski,
BAPTISTE & WILDER, Washington, D.C., for Appellants.
Mark D. Wagoner, Jr., SHUMAKER, LOOP & KENDRICK,
Toledo, Ohio, for Appellees. **ON BRIEF:** Charles R. Both,
YABLONSKI, BOTH & EDELMAN, Washington, D. C.,
Michael J. Passino, LASSITER, TIDWELL &
HILDEBRAND, Nashville, Tennessee, Anne Curry
Thompson, KELMAN, LORIA, SIMPSON, WILL,
HARVEY & THOMPSON, Detroit, Michigan, Elizabeth
Grdina, INTERNATIONAL BROTHERHOOD OF
TEAMSTERS, LEGAL DEPARTMENT, Washington, D.C.,
for Appellants.  Michael M. Briley, SHUMAKER, LOOP &
KENDRICK, Toledo, Ohio, Michael J. Mills, LAW
OFFICES OF MICHAEL J. MILLS, Bloomfield Hills,
Michigan, Claudia D. Orr, BARRIS, SCOTT, DENN &
DRIKER, Detroit, Michigan, Gerry M. Miller, PREVIANT,
GOLDBERG, UELMAN, GRATZ, MILLER &
BRUEGGEMAN, Milwaukee, Wisconsin, for Appellees.

_____

**OPINION**

_____

    CLAY, Circuit Judge.  Plaintiffs Robert Jordan, David Iho,
Patrick Reardon and Bill Sercombe appeal from the order
entered by the district court approving a settlement of
Plaintiffs' ERISA class action suit brought against

_____

    [*] The Honorable Ann Aldrich, United States District Judge for the
Northern District of Ohio, sitting by designation.

required on the part of the IBT to recognize that it believed
the IBT's interests were implicated, and could have
intervened in the suit before the final judgment was issued.
*See Cuyahoga Valley Ry. Co. v. Tracy*, 6 F.3d 389, 396 (6th
Cir. 1993) (denying motion to intervene where the intervenors
filed their motion after final judgment was entered, even
though the intervenors long knew of their interest in the
outcome).  The IBT chose to remain silent throughout the
litigation process and instead permitted Plaintiffs to resolve
the claims.  As this Court stated in *Cuyahoga Valley*, "[t]he
intervenors chose to rely in the Attorney General's best
efforts, which they were entitled to do.  They are not,
however, entitled to then enter the proceedings after the case
has been fully resolved, in an attempt to achieve a more
satisfactory resolution." *Id.*

    Further, the IBT has not met its burden of demonstrating
that Plaintiffs would inadequately represent its interest on the
attorney's fees issue.  While this burden is minimal because
the movant need not prove that the representation will in fact
be inadequate, but only that it "may be" inadequate, *Miller*,
103 F.3d at 1247 (quoting *Linton v. Commissioner of Health
and Env't, State of Tenn.*, 973 F.2d 1311, 1319 (6th Cir.
1992)), this Court has held that a movant fails to meet his
burden of demonstrating inadequate representation when 1)
no collusion is shown between the existing party and the
opposition; 2) the existing party does not have any interests
adverse to the intervener; and 3) the existing party has not
failed in the fulfillment of its duty.  *See Bradley v. Milliken*,
828 F.2d 1186, 1192 (6th Cir. 1987).

    In this case, it is clear that Plaintiffs are not in collusion
with the MCTWF.  Plaintiffs have no interests adverse to the
IBT, and Plaintiffs have actively and thoroughly litigated the
attorney's fees issue at every stage of this suit.  The IBT's
only argument is that the IBT would be more vigorous in
pursuing its claim for reimbursement than Plaintiffs.
However, the IBT does not identify a single argument that the
IBT would have made in support of its position that Plaintiffs

of a motion to intervene pursuant Rule 24(a)(2), we review the district court's timeliness determination for abuse of discretion, where the three remaining Rule 24(a)(2) factors are reviewed *de novo*. *See id.* A district court abuses its discretion "when it relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard." *Phelan v. Bell*, 8 F.3d 369, 372 (6th Cir. 1993). In denying the IBT's motion to intervene for purposes of the reimbursement of attorney's fees issue, the district court found that the IBT's motion was untimely and that intervention was unnecessary because Plaintiffs could adequately represent the IBT's interests on appeal.

The question of timeliness is considered with regard to five factors: 1) the point to which the suit has progressed; 2) the purpose for which the intervention is sought; 3) the length of time preceding the application during which the proposed intervenor knew or reasonably should have known of his interest in the case; 4) the prejudice to the original parties due to the proposed intervenor's failure, after he or she knew or reasonably should have known of his interest in the case, to apply promptly for intervention; and 5) the existence of unusual circumstances militating against or in favor of intervention. *See Grubbs v. Norris*, 870 F.2d 343, 345 (6th Cir. 1989).

The IBT did not file its motion for intervention until after the district court issued its final judgment concerning the attorney's fees and costs award. We find that the IBT's failure to intervene before final judgment was entered renders the motion untimely. The IBT was aware of its interest in the attorney's fees issue before Defendants knew of the IBT's monetary stake in the settlement outcome; the IBT also had numerous opportunities to intervene in this litigation in order to safeguard its interests on the attorney's fees issue, ranging from January 21, 1998, when the Settlement Agreement was signed, to June 15, 1998, when the district court held that Plaintiffs' attorney's fees award could not include the amount previously advanced by the IBT. Hence, no foresight was

Defendants, the Michigan Conference of Teamsters Welfare Fund, *et al.*,[1] wherein the court found that any remittance of attorney's fees advanced from funds awarded by the district court to the International Brotherhood of Teamsters AFL-CIO ("IBT"), constitutes a prohibited transfer of plan assets for the benefit of a party in interest. The IBT appeals from the order entered by the district court denying their motion to intervene in this action. For the reasons set forth below, we REVERSE the district court's order finding that Plaintiffs' remittance of attorney's fees to the IBT would constitute a prohibited transfer and AFFIRM the district court's order denying the IBT's motion to intervene in this action.

## I.

Plaintiffs are participants in the Michigan Conference of Teamsters Welfare Fund, ("MCTWF"), which provides health care and other welfare benefits to approximately 17,000 members of the IBT. In July 1996, Plaintiffs filed a class action complaint against MCTWF and the other Defendants alleging violations of the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, and the Labor Management Relations Act, 29 U.S.C. § 185, in connection with Defendants' administration of this fund.

The parties subsequently agreed to settle all disputes and signed a comprehensive Stipulation and Agreement of Settlement on January 21, 1998 ("Settlement Agreement"). In relevant part, the Settlement Agreement provided that the MCTWF would pay Plaintiffs' counsel its reasonable attorney's fees. The agreement read in part as follows:

---

[1] William A. Bernard, Robert F. Rayes, H.R. Hillard, Robert J. Lawlor, Motor Carriers Employers Association of Michigan, Ray Buratto, Michigan Cartagemens Association, Howard McDougall, and Teamsters Joint Council were also named as Defendants. Plaintiffs are suing individually on their own behalf and on behalf of the beneficiaries and participants in the Michigan Conference of Teamsters Welfare Fund.

**Counsel for Plaintiffs** shall be entitled to seek and receive an award of reasonable attorney fees from defendant MCTWF to be determined by the **Court**. The amount of the attorney fees sought by **Counsel for Plaintiffs** will be on the basis of "lodestar" approach. *See generally*, *Building Service Local 47 Cleaning Contractors Pension Plan, et al. v. Grandview Raceway, et al.*, 46 F.3d 1392 (6th Cir. 1995). Nothing in this paragraph shall be deemed a waiver of any right of any **Settling Party** or participant/beneficiary to object to the reasonableness of the fees. Payment of such fees awarded shall be the sole responsibility of **MCTWF**. No additional fees shall be sought by **Counsel for Plaintiffs** for activities connected with the monitoring of this **Agreement** after the approval of attorney fees in this case by the **Court**, as set forth above.

(J.A. at 190.) After a hearing on January 29, 1998, the district court certified Plaintiffs' class, tentatively approved the Settlement Agreement, and approved the proposed class notice in all respects.

Plaintiffs' counsel first disclosed the IBT's role in helping to finance the litigation in affidavits submitted in support of their request for attorney's fees. Defendants subsequently objected to Plaintiffs' attorney's fees request on grounds that any money paid to Plaintiffs' counsel that would then be turned over to the IBT as reimbursement would constitute a prohibited transaction under ERISA § 406(a)(1)(D), which prohibits a benefit plan from transferring assets to a party in interest. Although Defendants agreed with the stated value of Plaintiffs' counsel's services and had no objection to the amount requested on those grounds, they objected to any attorney's fee award that would compel the MCTWF to make a prohibited transaction under ERISA. A hearing was held in May of 1998, during which the district court considered objections to the Settlement Agreement, and Plaintiffs' motion for an award of attorney's fees and expenses.

The district court misconstrued the language of § 408(b)(2), by accepting the application of the section proposed by Defendants, which is to limit payment for "services." Specifically, the district court opined that the problem with this argument is that § 408(b)(2) speaks to services and § 406(a)(1)(C) is the only § 406 transaction which addresses the "furnishing of . . . services," which would lead the district court to conclude that § 408(b)(2) provides an exemption only for § 406(a)(1)(C) transactions. Because Defendants' objections relied on § 406(a)(1)(D), which prohibits "transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan . . .", nothing in § 408(b)(2) speaks to assets transfers. The district court found the § 408(b)(2) exemption inapplicable to the Defendants' objections. We find no support for the district court's interpretation. The language in § 408(b) explicitly states that "[t]he prohibitions provided in § 406 will not apply" to reasonable arrangements with a party in interest for legal services. Nowhere is it mentioned that the exemption should apply only to § 406(a)(1)(D) and not to § 406(a)(1)(C). Accordingly, we find that the district court erred in finding that any remittance of advanced attorney's fees to the IBT constitutes a prohibited transfer of plan assets for the benefit of a party in interest.

## III.

### *Motion to Intervene*

The IBT argues that the district court abused its discretion when it denied its motion to intervene. A party moving to intervene under Federal Rule of Civil Procedure Rule 24(a)(2) must satisfy four requirements before intervention as of right will be granted: 1) timeliness of the application to intervene; 2) the applicant's substantial legal interest in the case; 3) impairment of the applicant's ability to protect that interest in the absence of intervention; and 4) inadequate representation of that interest by parties already before the court. *See Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997). In considering a district court's denial

and because the hours and rates are comparable to the benefit conferred on the MCTWF and its participants by Plaintiffs' action, Defendants cannot now assert that they subjectively intended to benefit the IBT by complying with the attorney's fees agreement in the settlement.

Finally, the transaction is permissible under ERISA § 408. Section 408 serves as an exception to the prohibitions set forth under § 406. Section 408 reads in part:

> (b)  The prohibitions provided in section 406 shall not apply to any of the following transactions . . .
>> (2)  Contracting or making reasonable arrangements with a party in interest for office space, or legal, accounting or other services necessary for the establishment or operation of the plan, if no more than reasonable compensation is paid therefore . . .

29 U.S.C. § 1108(b)(2). However, Defendants rely on the express language of § 408(b)(2) and argue, alternatively, that § 408(b)(2) does not apply here because IBT did not provide any services to the Plan. The district court agreed with Defendants' contentions.

As part of the settlement, Defendants agreed to pay Plaintiffs' reasonable attorney's fees and  acknowledged that the total fees and expenses sought by Plaintiffs were reasonable. The fact that Defendants did not object as to the hours or value of services rendered to the participants in the fund does not alter the fact that Defendants agreed to pay Plaintiffs their reasonable attorney's fees which thereby fall within the statutory exemption of ERISA § 408(b)(2), because the IBT advanced the funds to provide legal services necessary for the plan's protection. *See FirsTier Bank, N.A. v. Zeller*, 16 F.3d 907, 913-14 (8th Cir. 1994) (stating that § 408 authorizes reimbursement of legal fees incurred by the plan trustee in performance of his duties with the plan).

In June of 1998, the district court issued a memorandum order granting final approval to the Settlement Agreement and awarding Plaintiffs attorney's fees and litigation expenses. The court agreed with Defendants that any payment ultimately remitted to the IBT would constitute a prohibited transaction under ERISA, and therefore held that the award could not include money that had been advanced to Plaintiffs' counsel by the IBT. Accordingly, the court instructed Plaintiffs' counsel to submit affidavits delineating the total sums advanced by the IBT, which the court would then subtract from the attorney's fees and costs award.

In July of 1998, following receipt of these affidavits, the district court entered its final judgment ordering the MCTWF to pay attorney's fees of $248,944.71 and litigation expenses of $5,649.68. This award did not include the sums advanced to Plaintiffs' counsel by the IBT as fees ($160,978.04) and expenses ($61,493.26). Shortly thereafter, the IBT filed a motion to intervene under Federal Rule of Civil Procedure 24(a)(2) in order to pursue an appeal to recover the money it had advanced to Plaintiffs' counsel. In September of 1998, the district court denied the IBT's motion on grounds that it was untimely and unnecessary, and because Plaintiffs could adequately represent the IBT's interests on appeal. These timely appeals followed.

## II.

### *ERISA § 406 and Prohibited Transactions*

The Employment Retirement Insurance Security Act ("ERISA") § 406 prohibits plan fiduciaries from causing the benefit plan to engage in certain "prohibited transactions" because these transactions create a high potential for conflicts of interest. 29 U.S.C. § 1106(a) (1994).

Section 406(a) provides in part:

> (a)  Except as provided in 29 U.S.C. § 1108 [ERISA § 408]:

(1) A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect–

    (A) sale or exchange, or leasing, of any property between the plan and a party in interest;

    (B) lending of money or other extension of credit between the plan and a party in interest;

    (C) furnishing of goods, services, or facilities between the plan and a party in interest;

    (D) transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan; or

    (E) acquisition, on behalf of the plan, or any employer security or employer real property in violation of section 1107(a) of this title.

29 U.S.C. § 1106(a) (1994). Section § 1002(14)(D) defines a party in interest as including "an employee organization any of whose members who are covered by such plan." 29 U.S.C. § 1002(14)(D) (1994).

Statutory construction is a question of law that this Court reviews *de novo*. *See EEOC v. Frank's Nursery & Crafts, Inc.,* 177 F.3d 448, 454 (6th Cir. 1999). Plaintiffs principally argue that the award of attorney's fees, which would then be turned over to the IBT, is not prohibited by § 406(a)(1)(D) because 1) the money would first be transferred to Plaintiffs' counsel (who is not a party in interest) before being remitted to the IBT; 2) the payment is permissible because the MCTWF lacks any "subjective intent" to benefit the IBT; 3)

intent to benefit a party in interest. We disagree with this interpretation because it merely skims the surface of the important phrase "for the benefit of a party in interest" as contained in § 406(a)(1)(D).

In *Reich v. Compton*, the United States Court of Appeals for the Third Circuit considered the meaning of this language and found as follows:

As we read this language, it provides that a fiduciary breach occurs when the following five elements are satisfied: 1) the person or entity is "[a] fiduciary with respect to [the] plan"; 2) the fiduciary "cause[s]" the plan to engage in the transaction at issue; 3) the transaction "use[s]" plan assets; 4) the transaction's use of the assets is "for the benefit of" a party in interest; and 5) the fiduciary "knows or should know" that elements three and four are satisfied.

57 F.3d 270, 278 (3d Cir. 1995). The court further concluded that the fourth element requires a subjective intent to benefit a party in interest. *See id.* at 279. If a showing of subjective intent were not required, "section 406(a)(1)(D) would produce unreasonable consequences that we feel confident Congress could not have wanted." *Id.* That is, § 406 would prohibit fiduciaries from engaging in transactions that would benefit the plan. *Id.* "We thus find strong support for a subjective intent requirement in the language of section 406(a)(1)(D), and finding no contrary evidence in the legislative history, we conclude that element four requires proof of a subjective intent to benefit a party in interest." *Id.* at 280.

*Compton* is applicable to the instant case in that it compels the conclusion that the payment here is not prohibited because it will not be made with the subjective intent to benefit the IBT. The parties agreed in the Stipulation Agreement that payment of reasonable attorney's fees and expenses should be made by the MCTWF utilizing the lodestar method. Because Defendants did not object to the hours and rates of counsel,

subchapter other than an action described in paragraph (2) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1) (1994). A district court has substantial discretion in making attorney fee awards in ERISA cases. *See Central States Southeast and Southwest Area Pension Fund v. Hitchings Trucking*, 492 F. Supp. 906, 909 (E.D. Mich. 1980).

A number of cases have directed plans to make payments to attorneys for parties in interest. *See, e.g., Anita Founds. v. ILGWU Nat'l Retirement Fund*, 902 F.2d 185, 187 (2d Cir. 1990) (awarding attorney's fees to employer); *Operating Eng'rs. Pension Trust v. Gilliam*, 737 F.2d 1501, 1505 (9th Cir. 1984) (same); *Carpenters Southern California Administrative Corp. v. Russell*, 726 F.2d 1410, 1416 (9th Cir. 1984) (same); *Central States Southeast Area Pension Fund v. Hitchings Trucking*, 492 F. Supp. 906, 910 (E.D. Mich. 1980) (same). Here, the district court pointed to the "either party" language of § 502(g)(1) and reasoned that because the party in interest (the IBT) was not a party to the litigation at the time of the award, a payment by Plaintiffs to the IBT would constitute a prohibited transfer of assets. The district court does not, however, provide any authority to support this conclusion. As we stated in *Cyclops*, and other courts have agreed, the transactions prohibited by ERISA § 406 cannot be interpreted broadly. *See Cyclops*, 860 F.2d at 203; *Amato*, 773 F.2d at 1417; *Phillips*, 614 F. Supp at 720. Because ERISA must be strictly construed, we find the district court's interpretation of § 502(g)(1) unpersuasive.

Moreover, the transaction at issue is permissible because MCTWF lacks subjective intent to benefit the IBT. In the instant case, the district court noted that nothing in ERISA's prohibited transaction provisions "literally requires knowing or subjective intent to benefit" the party in interest. (J.A. at 53.) Nonetheless, the district court found that Plaintiffs' counsel's proposal to remit money to the IBT to reimburse the IBT for money it expended is enough to create a subjective

the transfer is permitted by ERISA § 502(g), which authorizes a district court to award attorney's fees to a victorious party in a lawsuit, even if that party qualifies as "party in interest" under § 406(a); and 4) such a transfer is expressly authorized by ERISA § 408 as an exemption from the "prohibited transfer" provision. We will address each of Plaintiffs' arguments in turn.

We first consider the Congressional intent of § 406. Section 406(a)(1) is designed to prohibit transactions that would clearly injure the plan. *See Lockheed Corp. v. Spink*, 517 U.S. 882, 888 (1996). Congress adopted § 406 to prevent employee benefit plans from engaging in transactions that would benefit parties in interest at the expense of plan participants and their beneficiaries. *See id.* at 888. This Court, as well as others, have noted that because § 406(a) characterizes *per se* violations, it should be interpreted narrowly. *See United Steelworkers of Am., Local 2116 v. Cyclops Corp.*, 860 F.2d 189, 203 (6th Cir. 1988); *Amato v. Western Union Int'l, Inc.*, 773 F.2d 1402, 1417 (2d Cir. 1985) (stating that a broad interpretation of the transactions prohibited by § 406 bars plaintiff's claim); *Phillips v. Amoco Oil Co.*, 614 F. Supp. 694, 720 (N.D. Ala. 1985), *aff'd*, 799 F.2d 1464 (11th Cir. 1986) (stating that Congress did not intend a broad interpretation of § 406). Further, the Supreme Court has maintained that ERISA must be strictly construed and that courts should not assume causes of action that are not primarily provided for in the statute. *See Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251-52 (1993); *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985); *Nachman Corp. v. Pension Benefit Guar. Corp.*, 446 U.S. 359, 361 (1980); *see also Brock v. Citizens Bank of Clovis*, 841 F.2d 344, 346-47 (10th Cir. 1988) (finding that a payment made by a plan to a third party was not a violation of § 406, even when the third party used proceeds to pay off a loan to a party in interest because "unless the act complained of falls within the specific list of dealings proscribed by Sec. 1106 (or within the self dealing provision of Sec. 1104(a)(1)), the transaction does not constitute a per se violation of ERISA").

Congress adopted § 406(a)(1) of ERISA to prevent plans from engaging in certain types of transactions that had been used in the past to benefit other parties at the expense of the plans' participants and beneficiaries. Prior to the implementation of ERISA, benefit plans normally engaged in transactions with related parties so long as the transactions were at "arm's-length." *See Comm'r of IRS v. Keystone Consol. Indus.*, 508 U.S. 152, 160 (1993). However, this rule was difficult to monitor and therefore "provided an open door for abuses" by plan trustees. *Id.* Congress then enacted § 406(a) with the goal of creating a bar to certain types of transactions that were regarded as likely to injure a plan. *Id.*; *See* S. Rep. No. 93-383, 93rd Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.C.C.A.N. 4890, 4981.

Plaintiffs first contend that § 406 does not apply because the money will first be transferred to Plaintiffs' counsel. In recognizing that the IBT is a party in interest here, the proper focus of the analysis is whether there is intent to benefit the IBT. We find that there is no such intent. The legislative history indicates that § 406 was intended to protect plan members by preventing fiduciaries from engaging in transactions that could hurt the plan. In *Cyclops*, this Court recognized that a narrow construction of § 406 provides flexibility. *See Cyclops*, 860 F.2d at 203. Notwithstanding the narrow interpretation of prohibited transactions under § 406, the pertinent language in § 406 is actually quite broad. Specifically, the language of § 406 is broad when it refers in part, to "transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan." 29 U.S.C. § 1106(a) (1994). Even the narrowest construction demonstrates that the drafters of § 406 did not intend to view the transaction at issue as a prohibited transaction. The remittance of attorney's fees to the IBT would not benefit the IBT in the manner intended to be proscribed by the statute. A benefit is defined as an advantage, privilege, profit or gain. *See* Black's Law Dictionary 150 (7th ed. 1999). IBT would not receive a benefit in the context of the statutory framework involved in the instant case inasmuch as the transaction would merely

constitute repayment for money already expended by IBT in support of Plaintiffs' suit against Defendants. Moreover, the IBT would receive the attorney's fees advanced without the payment of interest. IBT therefore does not stand to receive a profit or gain from the alleged "prohibited transaction." Indeed, the transaction at issue does not contain the "abuse" Congress sought to protect in promulgating § 406(a), as the transaction will not injure the plan. *Comm'r of IRS*, 508 U.S. at 160; S. Rep. No. 93-383, 93rd Cong., 22 Sess. (1974).

Plaintiffs, as plan members, presumably would not have been able to bring this suit without the financial support of the IBT, since the IBT advanced the legal costs. Plaintiffs brought suit against Defendants because they believed that the fund managers were engaged in corruption and mismanagement. Indeed, if we followed the reasoning of the district court, groups such as the IBT would be discouraged from assisting plan members to right the wrongs committed by fiduciaries. We believe that such a result would go against the very core of what § 406 seeks to prevent. *See Comm'r v. Keystone Consol. Indus., Inc.*, 508 U.S. 152, 160 (1993) (noting that in enacting § 406(a) barring transactions between a "party in interest" and an ERISA plan, "Congress' goal was to bar categorically a transaction that was likely to injure the pension plan").

We now consider Plaintiffs' contention that the transaction at issue is permitted by ERISA § 502(g) and therefore, beyond the reach of § 406(a)(1)(D). While § 406(a)(1)(D) prohibits a fiduciary from causing a plan to engage in certain conduct that is deemed to involve a prohibited transaction, it does not limit a district court's authority to award fees or to direct plan trustees to make payments pursuant to a court order. Such an interpretation of § 406 is both narrow and strained; Congress did not intend the section to be read in that manner. *See Phillips*, 614 F. Supp. at 720. ERISA § 502(g)(1) authorizes a district court to award a reasonable attorney's fee to a party without regard to the party's interest in the plan. Section 502(g)(1) reads in pertinent part: "[i]n any action under this