Evergreen C. CHOU, Kimberly Wilder, Roger Snyder, and Eric Prindle, Plaintiffs,

v.

NEW YORK STATE BOARD OF ELECTIONS, et al., Defendants.

No. 04 CV 2758(NG).

United States District Court, E.D. New York.

Aug. 25, 2004.

Jennifer R. Weiser, Jeremy M. Creelan, New York City, for plaintiffs.

Stanley L. Zalen, Albany, NY, Stephanie C. Galteri, Hanppauge, NY, for defendants.

## OPINION AND ORDER

GERSHON, District Judge.

Plaintiffs in this action, members of the New York Green Party, bring suit challenging on First and Fourteenth Amendment grounds New York Election Law § 6–140(1)(b), which requires that witnesses to nominating petitions for independent candidates be residents of the district in which such candidates run for office. Plaintiff Evergreen C. Chou is a candidate for independent nomination for the New York State Assembly representing the 22nd District. Plaintiff Kimberly Wilder is a candidate for independent nomination for the New York State Senate representing the 4th District. Plaintiffs Roger Snyder and Eric Prindle are registered voters and members of the Green Party who wish to serve as witnesses for these candidates' nominating petitions but are prevented from doing so by Section 6–140(1)(b) because they are not residents of the candidates' districts. Defendants are the New

York State Board of Elections and the Suffolk County Board of Elections, as well as the Commissioners of each Board sued in their official capacity.[1] On July 9, 2004, plaintiffs moved for a preliminary injunction to enjoin defendants from enforcing Section 6–140(1)(b). At a hearing before me on July 16, 2004, the parties agreed that plaintiffs' motion would be converted into a motion for summary judgment. State defendants also move for summary judgment dismissing the action. County defendants oppose plaintiffs' motion for summary judgment but have not moved independently for summary judgment. For the following reasons, plaintiffs' motion is granted and the State defendants' motion is denied.

## BACKGROUND

The essential facts are not in dispute. Therefore, judgment as a matter of law under Rule 56(c) of the Federal Rules of Civil Procedure is proper. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

New York Election Law § 6–140(1)(b) requires that witnesses to the signatures on nominating petitions for independent candidates be registered voters residing in the same district as the office to which the petition pertains.[2] That is, the witness must reside in the district for which the candidate is running for office. Notaries public and commissioners of deeds who do not reside in the district may also witness nominating petitions by individually swearing each signatory. *See* N.Y. Elec. Law § 6–140(2). If a witness is challenged and deemed ineligible, none of the signatures on the petitions witnessed by that individual are counted in determining whether the candidate has obtained enough signatures to gain access to the ballot. *See Lerman v. Bd. of Elections*, 232 F.3d 135, 139 (2d Cir.2000).

The Green Party of New York State obtained party status under New York law in 1998 by securing over 50,000 votes in the gubernatorial election. *See* N.Y. Election Law § 1–104(3). However, the Green Party lost its party status in December 2002. As a result, all Green Party candidates for office in New York State are subject to the requirements for independent candidates not affiliated with a party.

Plaintiff Chou is a candidate for independent nomination for the New York State Assembly in the 22nd District, where he resides. Plaintiff Wilder is a candidate for independent nomination for the New York State Senate in the 4th District, where she resides. Pursuant to the requirements for independent candidates, Chou and Wilder must obtain signatures totaling five percent of the votes cast in the last gubernatorial election in the district for which they are running, but not to exceed either 1500 signatures for State Assembly candidates or 3000 signatures for State Senate Candidates. *See* N.Y.

---

**1.** Plaintiffs originally named the New York City Board of Elections and its Commissioners as defendants as well. Plaintiffs voluntarily dismissed these City defendants on July 22, 2004, after the City defendants stated on the record at a hearing before me on July 16, 2004 that they do not recognize objections based on the witness residence requirement of Section 6–140(1)(b).

**2.** New York Election Law § 6–140(1)(b) provides that a petition witness must be "a duly

qualified voter of the state and ... qualified to sign the petition." In turn, Section 6–138 of the Election Law provides that, in order to be qualified to sign a petition, a person must be a "registered voter[ ] of the political unit for which a nomination is made." Together, the effect of these provisions is that witnesses to an independent nominating petition must reside in the district for which the nomination is sought.

Elec. Law § 6–142(2)(f), (g). Based on the number of votes in the last gubernatorial election in the 22nd District, Chou needs at least 696 signatures in order to be placed on the ballot for State Assembly. Based on the number of votes in the last gubernatorial election in the 4th District and the statutory cap, Wilder needs at least 3000 signatures in order to be placed on the ballot for State Senate. For both candidates, the number of signatures required to gain ballot access is greater than that required for candidates from political parties. *See* N.Y. Elec. Law § 6–136(2) (requiring five percent of *enrolled party members* in a district to sign a petition to designate a candidate and capping the total number of signatures at 1000 for State Senate candidates and 500 for State Assembly candidates). In addition, both Chou and Wilder state that they want to secure two-to-three times the minimum number of signatures in order to insure against the possibility that some of their signatures will be invalidated after the petitioning process ends. As a practical matter, candidates almost always take this precaution. *See Lerman,* 232 F.3d at 147 ("[A]s a practical matter a candidate seeking election needs a surplus of signatures, because they will likely be challenged on any number of grounds, resulting in some, perhaps many, invalidations.") (internal quotation marks omitted).

The petition process for independent candidate nominations begins approximately one month later than that for party nominating petitions. Voters may sign only one nominating petition for each office. N.Y. Elec. Law § 6–138(1). Thus, independent candidates face a shrinking pool of eligible petition signatories.

Both Chou and Wilder state that they have friends and colleagues from their activities in the Green Party and in local community organizations who support their candidacies and wish to express this support by circulating petitions on their behalf, but are prevented from doing so by Section 6–140(1)(b) because they are not residents of their districts. Plaintiffs Snyder and Prindle each wish to serve as a witness for one of these candidates by circulating nominating petitions on his or her behalf.

## DISCUSSION

*Subject Matter Jurisdiction*

██ State defendants argue the Eleventh Amendment bars this action against the New York State Board of Elections because the Board is a state agency. Because plaintiffs seek only declaratory and prospective injunctive relief, under the doctrine of *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), the Eleventh Amendment does not bar this suit. *See Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 73, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996); *Green v. Mansour,* 474 U.S. 64, 68, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985).

## *Constitutionality of the Section 6–140(1)(b) Witness Residence Requirement*

██ When determining what level of scrutiny to apply to a challenged state election law, the court must first ascertain the extent to which the challenged provision burdens First and Fourteenth Amendment rights. *See Burdick v. Takushi,* 504 U.S. 428, 434, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992); *Lerman v. Bd. of Elections,* 232 F.3d 135, 145 (2d Cir.2000). Laws imposing severe burdens on those rights must be narrowly tailored to serve compelling state interests, but lesser burdens receive less exacting scrutiny. *Burdick,* 504 U.S. at 434, 112 S.Ct. 2059; *Lerman,* 232 F.3d at 145; *Krislov v. Rednour,* 226 F.3d 851, 859 (7th Cir.2000).

In *Lerman v. Board of Elections*, the Second Circuit found that the residence requirement for witnesses to nominating petitions for party candidates, which is nearly identical to the residence requirement at issue in this case, "severely burdens interactive political speech and association rights protected by the First Amendment ... without advancing *any* legitimate or important state interest" and therefore held the provision unconstitutional on its face. *Lerman*, 232 F.3d at 139. Plaintiffs argue that *Lerman* controls this case. I agree.

The provision at issue in *Lerman*, Section 6–132(2) of the New York Election Law, dealt with designating petitions for candidates from political parties. Section 6–132(2) requires that witnesses to these petitions be "residents of the political subdivision in which the office or position is to be voted for," thus imposing a residence requirement identical to the requirement at issue in this case, and that they be registered in the same party as the candidate petitioning for nomination. Thus, in addition to restricting the eligible petition witnesses by residence, it also restricted eligible witnesses by political party.

The plaintiffs in *Lerman* were members of the Independence Party, one of whom sought his party's nomination for a seat on the New York City Council. Two other plaintiffs were residents of his district who signed a nominating petition witnessed by Lerman, a non-resident, which was later invalidated under Section 6–132(2). Plaintiffs then brought suit challenging Section 6–132(2), claiming that the witness residence requirement violated the First and Fourteenth Amendments by permitting only district residents to be eligible to witness signatures on a party candidate's designating petition. The Court found that all of the plaintiffs, including Lerman, had standing to sue. *See Lerman*, 232

F.3d at 142–43. Finding that the statute "clearly and directly restricts 'core political speech,' as opposed to the 'mechanics of the electoral process,'" the Second Circuit subjected the statute to strict scrutiny and held it unconstitutional on its face. *See id.* at 139, 146.

■ The petition circulation activity at issue in this case is identical to that in *Lerman*, where the Court found that such activity, "while part of the ballot access process, clearly constituted core political speech subject to exacting scrutiny" because it "of necessity involves both the expression of a desire for political change and a discussion of the merits of the proposed change." *Lerman*, 232 F.3d at 146 (quoting *Meyer v. Grant*, 486 U.S. 414, 421, 108 S.Ct. 1886, 100 L.Ed.2d 425 (1988)). Likewise, the burdens that Section 6–140(1)(b) impose on political speech and association in this case are, for constitutional purposes, indistinguishable from those the Court described in *Lerman*.

Petition circulation bears an intimate relationship to the right to political or expressive association, and the right to political association is at the core of the First Amendment. *Lerman*, 232 F.3d at 146–47: *see also Buckley v. American Constitutional Law Found., Inc.*, 525 U.S. 182, 186–87, 119 S.Ct. 636, 142 L.Ed.2d 599 (1999) (petition circulation involves "interactive communications concerning political change," and "First Amendment protection for such interaction ... is at its zenith") (internal quotation marks omitted); *Meyer v. Grant*, 486 U.S. 414, 421–22, 108 S.Ct. 1886, 100 L.Ed.2d 425 (1988). By reducing the number of people available to circulate petitions and precluding candidates from using witnesses of their choosing, the statute infringes on candidates' ability to disseminate their message and promote their political views, an ability intimately connected with their right of

political association. *See Lerman*, 232 F.3d at 147; *Krislov*, 226 F.3d at 860; *see also American Constitutional Law Found., Inc.*, 525 U.S. at 193–95, 119 S.Ct. 636. The witness residence requirement also infringes on the associational rights of candidates' out-of-district supporters, like plaintiffs Snyder and Prindle, who are prevented from inviting other voters to sign petitions on behalf of the candidates.[3] Thus, Section 6–140(1)(b) imposes a severe burden on political speech and association and is subject to strict scrutiny. *See Lerman*, 232 F.3d at 146.

Defendants' argument that Section 6–140(1)(b) should not be subject to strict scrutiny because it is less burdensome to First Amendment rights than the provision at issue in *Lerman* is rejected.[4] Under the reasoning of *Lerman*, the statute directly restricts core political speech and thus triggers strict scrutiny. Defendants seek to distinguish Section 6–140(1)(b) by arguing that, because any registered voter in a district may witness petitions, regardless of party affiliation, there are more potential witnesses available to plaintiff candidates within their districts than was the case in *Lerman*. However, that any registered voter in the district *may* circulate a petition does not mean that any registered voter will be willing to do so and does little to mitigate the burden independent candidates face in their attempts to gain ballot access. Defendants' sugges-

tion that the candidates' non-resident supporters can accompany resident witnesses and educate district voters during the petitioning period is impractical; it is also irrelevant to the First Amendment inquiry. "We have consistently refused to overlook an unconstitutional restriction upon some First Amendment activity simply because it leaves other First Amendment activity unimpaired." *Lerman*, 232 F.3d at 152 (quoting *California Democratic Party v. Jones*, 530 U.S. 567, 120 S.Ct. 2402, 147 L.Ed.2d 502 (2000)). Thus, "that the witness residence requirement leaves open more burdensome avenues of communication ... does not relieve its burden on First Amendment expression." *Id.* (internal quotation marks omitted).

Regardless of how many people the law *allows* to petition for plaintiffs, Section 6–140(1)(b) indisputably *prevents* a large number of potential witnesses from carrying their political message to voters and thus inhibits effective political association. *See American Constitutional Law Found., Inc.*, 525 U.S. at 194–95, 119 S.Ct. 636; *Lerman*, 232 F.3d at 147; *Krislov*, 226 F.3d at 859–62. As the Court recognized in *Lerman*, for minor party candidates (and, by extension, for independent candidates who run without the benefit of a party), "parting with one or two avid circulators could significantly impact their campaigns." *Lerman*, 232 F.3d at 147 (quot-

---

**3.** Contrary to the State defendants' argument, this is true regardless of the candidates' likelihood of success. *See Lerman*, 232 F.3d at 147–48 (noting the challenges faced by minor political candidates).

**4.** Defendants invoke the Supreme Court's recent decision in *McConnell v. Federal Election Commission*, 540 U.S. 93, 124 S.Ct. 619, 157 L.Ed.2d 491 (2003), which upheld certain provisions of the Bipartisan Campaign Reform Act of 2002 ("BCRA"), to argue that not all election regulation is subject to strict scrutiny. Their reliance on *McConnell* is mis-

placed. *McConnell*, which reviews campaign finance law, did not consider ballot access restrictions. Additionally, the Court made clear that the BCRA provisions it was upholding, which ban soft money contributions for a certain period leading up to an election, were contribution limitations akin to those it has upheld in the past, rather than expenditure limitations, which it has long held infringe on significant First Amendment concerns and thus are subject to strict scrutiny. *See McConnell*, 124 S.Ct. at 657–68.

ing *Krislov*, 226 F.3d at 862). Even if, as a practical matter, the law prevents only a few people from circulating petitions, "[p]olitical association is at the core of the First Amendment, and even practices that only potentially threaten political association are highly suspect." *Krislov*, 226 F.3d at 860 (quoting *McCloud v. Testa*, 97 F.3d 1536, 1552 (6th Cir.1996)).

Because Section 6–140(1)(b) is subject to strict scrutiny, it must be narrowly tailored to advance a compelling state interest. The State surely has an interest in regulating the electoral process, especially when it seeks to protect the integrity of that process. *See Burdick*, 504 U.S. at 434, 112 S.Ct. 2059; *Lerman*, 232 F.3d at 138. That the defendants' asserted interests "are important in the abstract," however, does not necessarily mean that their chosen means of regulation will in fact advance those interests. *Lerman*, 232 F.3d at 149.

■ The State argues it has an interest in requiring independent candidates to show some level of support within the district before they can get on the ballot, in order to ensure that the scarce resources available on current voting machines are not "wasted on candidates with little or no support." However, the State's interest in ensuring a base of support for independent candidates is already served by the requirement that they obtain a minimum number of signatures by district residents, *see Lerman*, 232 F.3d at 151, and, in fact, more signatures than party candidates.

Suffolk County argues it has an interest in "protecting [its] internal vote gathering process." However, the County does not explain how Section 6–140(1)(b) promotes this interest. The County also argues that its interest in quickly resolving petition challenges would be unduly burdened if a witness resides far from the district. But the County Election Board has statewide

subpoena power, and the *Lerman* court ruled that local boards' subpoena power, combined with the requirements that witnesses be state residents and submit an affidavit containing their residence address along with the petitions they witness, already protects the public interest in protecting the integrity of the process. *See id.* at 150.

In sum, Section 6–140(1)(b) severely burdens plaintiffs' free speech and associational rights by limiting the number of people who can witness petitions without promoting any compelling state interest. Therefore, the statute violates the First and Fourteenth Amendments to the United States Constitution and is invalid on its face.

## CONCLUSION

Plaintiffs, having established their right to relief, are entitled to a declaratory judgment that the witness residence requirement of Section 6–140(1)(b) violates the First and Fourteenth Amendments to the United States Constitution on its face, and to a permanent injunction. Their motion for summary judgment is granted, and the State defendants' motion for summary judgment is denied.

The Clerk of Court is directed to enter a judgment declaring that the witness residence requirement of New York State Election Law § 6–140(1)(b) is unconstitutional under the First and Fourteenth Amendments and permanently enjoining the defendants from implementing and enforcing that requirement.

Since plaintiffs are prevailing parties under 42 U.S.C. § 1988, they are entitled to reasonable attorneys' fees. They should serve and file their application for fees by September 24, 2004; defendants should serve and file any opposition to the amount requested by October 8, 2004; and plain-

tiffs may serve and file a reply no later than October 15, 2004.

**SO ORDERED.**