OPINION
{¶ 1} Petitioners-appellants, SmokeFreeOhio, Donald McClure, Susan Jagers, and Tracy Sabetta ("appellants") appeal from the judgment of the Franklin County Court of Common Pleas, which granted summary judgment in favor of protestor-appellee, Jacob Evans ("appellee"). For the following reasons, we affirm.
 {¶ 2} Appellants McClure, Jagers, and Sabetta are members of a committee responsible for a state initiative petition proposing a law called "The Smoke Free Workplace Act." Appellant SmokeFreeOhio drafted the proposed law.
 {¶ 3} On November 17, 2005, the committee filed the initiative petition with Intervenor Ohio Secretary of State J. Kenneth Blackwell ("Secretary"). The petition contained over 167,000 signatures from all 88 counties. On December 1, 2005, the Secretary transmitted part-petitions to the respective boards of elections to determine their validity. Following their review, the boards of elections submitted their respective reports to the Secretary.
 {¶ 4} Beginning on December 21, 2005, appellee filed protests against the petition with 34 county boards, including Franklin County. In 33 of the counties, the county prosecutor, on behalf of the respective board of elections, filed an action in the common pleas court pursuant to R.C. 3519.16. Upon motion by the Secretary, 27 cases were transferred to the Franklin County Court of Common Pleas and consolidated with the Franklin County protest case.
 {¶ 5} In his protests, appellee raised several grounds, only one of which is at issue here: some of the circulators had not correctly identified their employer. More specifically, according to appellee, some of the circulators identified their employer as the American Cancer Society ("ACS"), rather than the professional petition-circulating company that actually employed them. Failure to disclose the correct employer, appellee argued, violated R.C.3501.38(E)(1) and, as a result, invalidated those part-petitions containing the incorrect information.
 {¶ 6} On May 4, 2006, the trial court issued a decision on cross-motions for summary judgment. The court granted appellee's motion on the ground that some circulators were not employed by ACS and that failure to provide correct employer information violated R.C. 3501.38(E)(1) and invalidated the affected part-petitions. The court thereafter issued a judgment entry listing the part-petitions determined to be invalid. The court also issued a judgment entry directing the boards of elections to revise and reissue their reports to the Secretary.
 {¶ 7} Appellants filed timely appeals, and they raise the following assignments of error for this court's review:
1. The Trial Court erred in holding that listing of [ACS] by circulators on a state initiative petition proposing the "Smoke Free Workplace Act" as the person employing the circulator to circulate the petition made the petitions invalid.
2. The Trial Court erred in failing to hold that, as applied to the facts in this case, the application of R.C. § 3501.38(E)(1) to invalidate the petition at issue would violate Art. II, Sections 1b and 1g of the Ohio Constitution.
3. The Trial Court erred in failing to hold that, as applied to the facts in this case, the application of R.C. § 3501.38(E)(1) to invalidate the petitions at issue would violate the Constitution of the United States and Art. I, Sections 2, 3, and11 of the Ohio Constitution.
 {¶ 8} Appellate review of summary judgments is de novo. Koosv. Cent. Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579, 588, citing Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704, 711. When an appellate court reviews a trial court's disposition of a summary judgment motion, it applies the same standard as the trial court and conducts an independent review, without deference to the trial court's determination. Maust v.Bank One Columbus, N.A. (1992), 83 Ohio App.3d 103, 107; Brown
at 711. Summary judgment is appropriate only where: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the non-moving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the non-moving party. Harless v.Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66.
 {¶ 9} Appellants' first assignment of error asserts that the trial court erred by finding that the circulators' identification of ACS as their employer invalidated the part-petitions. We disagree.
 {¶ 10} R.C. 3501.38(E)(1) provided, in pertinent part:
* * * On the circulator's statement for a declaration of candidacy, nominating petition, or declaration of intent to be a write-in candidate for a person seeking to become a statewide candidate or for a statewide initiative or a statewide referendum petition, the circulator shall identify the name and address of the person employing the circulator to circulate the petition, if any.
Baldwin's Ohio Revised Code Annot. (2006 Supp.).
 {¶ 11} We begin with the principle that, "[w]here the language of a statute is plain and unambiguous and conveys a clear and definite meaning there is no occasion for resorting to rules of statutory interpretation. An unambiguous statute is to be applied, not interpreted." Sears v. Weimer (1944),143 Ohio St. 312, paragraph five of the syllabus. Thus, "[i]t is only where the words of a statute are ambiguous or are based upon an uncertain meaning or there is an apparent conflict of some provisions that a court has the right to interpret a statute."Drake-Lassie v. State Farm Ins. Cos. (1998),129 Ohio App.3d 781, 788, citing Kroff v. Amrhein (1916), 94 Ohio St. 282. And, "[u]nless words are otherwise defined or a contrary intent is clearly expressed," we must give words contained in a statute "their plain and ordinary meaning." Cincinnati Metro. Hous.Auth. v. Morgan, 104 Ohio St.3d 445, 2004-Ohio-6554, at ¶ 6, citing Coventry Towers, Inc. v. Strongsville (1985),18 Ohio St.3d 120, 122, and Youngstown Club v. Porterfield (1970),21 Ohio St.2d 83, 86.
 {¶ 12} We find that R.C. 3501.38(E)(1) is neither uncertain nor ambiguous. Rather, it directs circulators to disclose the name of the person "employing" them to circulate the petition. In common, everyday language, the word "employ" means: "1. to hire or engage the services of (a person or persons); provide employment for; have or keep in one's service: * * * 2. to keep busy or at work; engage the attentions of[.]" Random House Dictionary of the English Language (2nd Ed. 1987) 638. Similarly, it can mean: "a. To engage the services of; put to work: * * * b. To provide with gainful work[.]" The American Heritage Dictionary (4th Ed. 2004): accessed via http://dictionary.reference.com. Thus, the legislature's use of the term "employing" in this context refers to a typical employment relationship.
 {¶ 13} In support of its argument that R.C. 3501.38(E)(1) contemplates a broader relationship than the typical employment relationship, appellants direct us to R.C. 3503.14, which imposes requirements for voter registration. R.C. 3503.14(A) provided, in pertinent part:
* * * The [registration] form shall include a space on which the person registering an applicant shall sign the person's name and a space on which the person registering an applicant shall name the employer who is employing that person to register theapplicant. * * *
(Emphasis added.) Baldwin's Ohio Revised Code Annot. (2006 Supp.).
 {¶ 14} However, we discern no meaningful difference between "the employer who is employing that person[,]" as used in R.C.3503.14(A), and "the person employing the circulator[,]" as used in R.C. 3501.38(E)(1). Instead, we find that "the person employing" is a phrase used commonly in federal and state law to define an employment relationship and, in this context, "employer" and "the person employing" are interchangeable. See, e.g., R.C. 4112.01(A)(2) ("`Employer' includes * * * any person employing four or more persons"); R.C. 4113.71(A)(2) (" `Employer' means * * * any person employing one or more individuals"); Sections 3121(b) and 3306(b), Title 26, U.S. Code (for purposes of certain provisions of federal tax laws, "employment" means "any service * * * performed * * * by an employee for the person employing him").
 {¶ 15} Having concluded that the reference to "person employing" in R.C. 3501.38(E)(1) refers to a typical employment relationship, we turn now to the question whether ACS was the person employing the affected circulators. In the legal context, as the trial court noted, Ohio courts have determined the parameters of employer-employee relationships "countless times." Thus, to apply a common and ordinary meaning to the phrase "person employing" to the facts before us, we look, as the trial court did, to the body of Ohio law defining the employment relationship.
 {¶ 16} In particular, we look to those decisions distinguishing between employees and independent contractors. "Whether someone is an employee or an independent contractor is ordinarily an issue to be decided by the trier of fact. The key factual determination is who had the right to control the manner or means of doing the work." Bostic v. Connor (1988),37 Ohio St.3d 144, paragraph one of the syllabus.
 {¶ 17} In Gillum v. Indus. Comm. (1943), 141 Ohio St. 373, paragraph two of the syllabus, the Ohio Supreme Court prescribed the following test:
Whether one is an independent contractor or in service depends upon the facts of each case. The principal test applied to determine the character of the arrangement is that if the employer reserves the right to control the manner or means of doing the work, the relation created is that of master and servant, while if the manner or means of doing the work or job is left to one who is responsible to the employer only for the result, an independent contractor relationship is thereby created.
 {¶ 18} In Bostic, the court also prescribed the factors to be considered in determining who has the right of control. Those factors include:
* * * [S]uch indicia as who controls the details and quality of the work; who controls the hours worked; who selects the materials, tools and personnel used; who selects the routes traveled; the length of employment; the type of business; the method of payment; and any pertinent agreements or contracts. * * *
Bostic at 146.
 {¶ 19} Courts have considered these same factors in determining whether a person or entity is an "employee" or "employer" under certain statutory language. See, e.g., State exrel. Stanadyne, Inc. v. Indus. Comm. (1984), 12 Ohio St.3d 199
(holding that customer of temporary employment agency controlled employees' manner or means of performing work; therefore, customer, not employment agency, was the "employer" for purposes of workers' compensation immunity under R.C. 4123.741); Eyermanv. Mary Kay Cosmetics, Inc. (1992), 967 F.2d 213 (affirming summary judgment on grounds that individual was independent contractor, not employee, and corporation with whom individual contracted was not "employer" for purposes of discrimination action under R.C. 4112.02).
 {¶ 20} We turn now to an application of these legal principles to determine whether the trial court correctly concluded that ACS was not the person employing the affected circulators. According to appellants, ACS managed the SmokeFreeOhio petition effort. As part of that effort, ACS contracted with Arno Political Consultants ("Arno"), a professional signature-gathering company, to collect approximately 75,000 signatures. Under the contract, ACS agreed to pay Arno a set amount for each signature obtained. Arno, in turn, retained and paid circulators as independent contractors. While ACS did not pay the circulators directly, ACS made payment to Arno for the specific use of paying circulators. Through a contact with Arno, ACS directed the signature-gathering effort toward specific geographic areas of Ohio and directed circulators away from events already covered. In these circumstances, appellants argue, requiring disclosure of Arno as the "person employing" the circulators defeats the disclosure of the "true party in interest," that is, the party paying for and supervising the petition effort — ACS.
 {¶ 21} In contrast, appellees argue that ACS is not "the person employing the circulators" for purposes of R.C.3501.38(E)(1). Appellee begins with the agreement between ACS and Arno. Section 3.04 of that agreement provides:
* * * [Arno] and its agents shall perform the services under this Agreement as Independent Contractors and shall not be treated as agents or employees of ACS for federal, state, or local tax purposes or for any other purpose. * * *
 {¶ 22} In addition, according to appellee, ACS had no relationship with these circulators. In contrast to ACS's relationship with circulators it directly hired and paid, ACS had no records or specific knowledge of the affected circulators. ACS did not train, direct, control, provide tax documentation to or pay the circulators. Instead, Arno and other subcontracting entities performed each of those responsibilities.
 {¶ 23} Based on these facts, we agree with the trial court's conclusion that ACS did not employ the affected circulators. The stipulated evidence establishes that ACS made a deposit to Arno for the purpose of paying circulators on a per-signature basis; the agreement between ACS and Arno provided certain payment parameters and stated that no circulators could use tobacco products while gathering signatures; ACS had infrequent interaction with the affected circulators; and, on a few occasions, ACS asked circulators, through Arno, not to go to certain events. This evidence does not establish that ACS controlled the manner or means of the circulators' work. ACS neither received nor retained any paperwork regarding the individual circulators. ACS did not identify, interview, hire, train, directly pay or provide tax documentation to the circulators. Rather, Arno and/or other entities provided all employment-related services to the circulators, had direct contact with the circulators, and directed their day-to-day work. On these facts, we agree with the trial court that ACS was not the person employing the affected circulators for purposes of R.C. 3501.38(E)(1).
 {¶ 24} Appellants argue, however, that such a conclusion conflicts with the Secretary's interpretation of R.C.3501.38(E)(1) and its application to the part-petitions at issue here. According to appellants, they sought the advice of the Secretary's chief elections counsel on this issue, and the counsel advised appellants that the circulators should disclose ACS as the person employing them. Appellants offered the Secretary's interpretation through appellant Jagers' deposition testimony and the affidavit of the president of Arno. The Secretary also intervened in the trial court proceeding and offered the opinion, consistent with that of his elections counsel, that the circulators correctly disclosed ACS as the person employing them.
 {¶ 25} It is well-established that, when interpreting statutes, courts must give due deference to an administrative interpretation formulated by an agency charged with its enforcement. Univ. of Toledo v. Heiny (1987),30 Ohio St.3d 143, 145-146. "However, when an agency's interpretation is unreasonable and thwarts the intent of the legislature, it must be overturned." Id. at 146. Accord Northfield Park Assoc. v.Ohio State Racing Comm., Franklin App. No. 05AP-749, 2006-Ohio-3446, at ¶ 19, citing Schroeder v. State Bd. ofRegistration for Prof. Engineers Surveyors, Franklin App. No. 04AP-338, 2004-Ohio-5793, at ¶ 12.
 {¶ 26} Here, we reject the Secretary's interpretation because it conflicts with the clear and unambiguous statutory directive that circulators must disclose the "person employing" them. Under the facts of this case, it is not reasonable to conclude that ACS is the person employing the affected circulators. Nor is it consistent with the legislative intent behind R.C. 3501.38(E)(1).
 {¶ 27} In Blankenship v. Blackwell (S.D.Ohio 2004),341 F.Supp.2d 911, 923, appeal dismissed (C.A.6, 2005), 429 F.3d 254, the court considered the impact of rampant fraud perpetrated by petition circulators during the 2004 election in Ohio. The court stated:
The record in this case is replete with credible, unchallenged instances of actual fraud in the circulation of petitions. The Ohio Secretary of State has detailed numerous and substantial instances of fraud on the part of petition circulators for the [presidential candidate Ralph] Nader petition ballot. Not only were various petition circulators non-residents of this State, they engaged in outright fraud by using false addresses to purportedly satisfy Ohio law. In addition, circulators engaged in additional acts of fraud by falsely attesting that petitions were circulated when they were not and by falsely attesting to signatures. After consideration of the evidence, the Secretary of State not only decided to exclude Nader's placement on the ballot but also recommended that a criminal investigation be undertaken. * * *
Id. at 923.
 {¶ 28} In an opinion concerning whether campaign staff were subject to compensation disclosure requirements under R.C.3501.381(A)(1), the Ohio Attorney General discussed theBlankenship decision, as well as the legislative history behind the bill containing the provision at issue here, R.C. 3501.38. In 2006 Ohio Atty.Gen.Ops. No. 2006-004, at 2 (Feb. 13, 2006), the Attorney General stated:
Legislative intent in the enactment of R.C. 3501.381
A special session of the General Assembly enacted Am. Sub. H.B. 1 for the purpose of reforming Ohio's campaign finance laws, and addressing a number of ancillary aspects of the conduct of elections. During the 2004 elections season certain alleged irregularities in the circulation of candidate and issue petitions were reported by the media, and some of those irregularities provided the basis for litigation challenging the placement of a particular candidate or an issue on the ballot. Among the problems identified was the payment of petition circulators on a per signature or per volume basis. Paying a petition circulator for each signature or by volume has a tendency to induce dishonesty and less than scrupulous behavior on the part of the petition circulator.
 {¶ 29} Against this backdrop, it makes sense that the legislature would have focused its efforts on requiring the disclosure of the person or entity paying a circulator, particularly a circulator being paid on a per-signature basis. Thus, our reading of the statute as requiring the disclosure of the entity that not only directly controls the manner and means of the circulator's work, but also directly pays the circulator, furthers this legislative purpose. The Secretary's contrary interpretation does not.
 {¶ 30} For all of these reasons, we agree with the trial court's conclusion that ACS is not "the person employing" the affected circulators for purposes of R.C. 3501.38(E)(1). Therefore, we overrule appellants' first assignment of error.
 {¶ 31} In their second and third assignments of error, appellants argue that application of the trial court's interpretation of R.C. 3501.38(E)(1) to the facts of this case violates the Ohio and United States Constitutions. Appellants do not argue that R.C. 3501.38(E)(1) is unconstitutional on its face.
 {¶ 32} We begin any constitutional analysis with the principle that statutes carry a strong presumption of constitutionality. Harrold v. Collier, 107 Ohio St.3d 44,2005-Ohio-5334, at ¶ 36, citing State v. Thompkins (1996),75 Ohio St.3d 558, 560; Kistler v. Ohio Bur. of Workers' Comp.,
Franklin App. No. 04AP-1095, 2006-Ohio-3308, at ¶ 11. The party challenging a statute bears the burden of proving that the provision is unconstitutional beyond a reasonable doubt.Harrold at ¶ 36, citing Thompkins at 560; Kistler at ¶ 11. Where a party challenges a statute on the ground that it is unconstitutional as applied to a particular set of facts, the party making the challenge "bears the burden of presenting clear and convincing evidence of a presently existing set of facts that make the [statute] unconstitutional and void when applied to those facts." Harrold at ¶ 38, citing Belden v. Union Cent.Life Ins. Co. (1944), 143 Ohio St. 329, paragraph six of the syllabus. Accord Kistler at ¶ 11.
 {¶ 33} As applied here, appellants had the burden to prove that R.C. 3501.38(E)(1) is unconstitutional beyond a reasonable doubt. And, because appellants challenged the provision only as applied to them, they had the burden to present clear and convincing evidence of facts that make the provision unconstitutional. We turn now to appellants' specific challenges.
 {¶ 34} In their second assignment of error, appellants argue that the trial court's interpretation of R.C. 3501.38(E)(1) violates Sections 1b and 1g, Article II, of the Ohio Constitution. We disagree.
 {¶ 35} The Ohio Constitution reserves for the people of the State of Ohio "the power to propose to the General Assembly laws and amendments to the constitution, and to adopt or reject the same at the polls on a referendum vote as hereinafter provided." Section 1, Article II. The constitution sets out specific requirements for proposing a law by initiative petition. These requirements, the constitution provides, "shall be self-executing, except as herein otherwise provided. Laws may be passed to facilitate their operation, but in no way limiting or restricting either such provisions [that is, provisions for initiative and referendum] or the powers herein reserved." Section 1g, Article II.
 {¶ 36} Here, appellants assert that appellee and the trial court have unconstitutionally restricted the power of the people to enact laws by initiative petition because: (1) it is "not practicable" for organizations undertaking a petition effort to rely solely on volunteers to gather the signatures required; and (2) a single interpretation of the disclosure requirements in R.C. 3501.38(E)(1) restricts, rather than facilitates, the initiative process. Appellants' assertions are unpersuasive.
 {¶ 37} First, nothing in this or the trial court's interpretation of R.C. 3501.38(E)(1) implies or requires the use of volunteer, rather than paid, circulators. Appellants are free to use paid circulators; those circulators must simply disclose the correct employment information. Appellants have presented no evidence, let alone clear and convincing evidence, that this disclosure requirement would in any way inhibit or restrict their efforts or success. In particular, they have presented no evidence that disclosing an entity other than ACS would be any more restrictive than disclosing ACS as the person employing the affected circulators. Without such evidence, appellants have not satisfied their burden.
 {¶ 38} Second, we do not accept appellants' assertion that the protestor's (or the trial court's) disagreement with the Secretary's interpretation of the statute, standing alone, creates an unconstitutional restriction of the initiative process. We acknowledge the inconvenience arising from conflicting statutory interpretations of the applicable requirements, as well as the delay inherent in the protest process itself. We find, however, in the absence of any evidence that applying the disclosure requirement in this manner inhibits the process, that judicial interpretation and application of a requirement we find to be clear, unambiguous, and in furtherance of legislative intent, facilitates, rather than restricts, the initiative process. Therefore, we overrule appellants' second assignment of error.
 {¶ 39} In their third assignment of error, appellants argue that the trial court erred by failing to find that its interpretation of R.C. 3501.38(E)(1), as applied to the facts of this case, violates rights to political speech, association, and assembly, as guaranteed by the Ohio and United States Constitutions. Again, we disagree.
 {¶ 40} The United States Supreme Court has found that circulating a petition is "`core political speech,' because it involves `interactive communication concerning political change.'" Buckley v. American Const. Law Found.
(1999), 525 U.S. 182, 186 ("Buckley II"), quotingMeyer v. Grant (1988), 486 U.S. 414, 422. Thus, "First Amendment protection for such interaction * * * is `at its zenith.'" Buckley II at 187, quotingMeyer at 425. The court also has recognized, however, "that `there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes.'"Buckley II at 187, quoting Storer v. Brown
(1974), 415 U.S. 724, 730.
 {¶ 41} In Buckley v. Valeo (1976), 424 U.S. 1 ("BuckleyI"), the court applied a heightened-scrutiny standard when compelled disclosure of campaign-related payments was at issue, recognizing that "significant encroachments on First Amendment rights of the sort that compelled disclosure imposes cannot be justified by a mere showing of some legitimate government interest." Id. at 64. The court acknowledged, however, "that there are governmental interests sufficiently important to outweigh the possibility of infringement, particularly when the `free functioning of our national institutions' is involved." Id. at 66, quoting Communist Party v. Subversive Activities ControlBd. (1961), 367 U.S. 1, 97. The court further stated: "The governmental interests sought to be vindicated by the disclosure requirements are of this magnitude." Buckley I at 66.
 {¶ 42} In its review of the disclosure requirements in the Federal Election Campaign Act of 1971, 86 Stat. 3, amended by88 Stat. 1263, the court identified three governmental interests:
* * * First, disclosure provides the electorate with information" as to where political campaign money comes from and how it is spent by the candidate" in order to aid the voters in evaluating those who seek federal office. * * *
Second, disclosure requirements deter actual corruption and avoid the appearance of corruption by exposing large contributions and expenditures to the light of publicity. * * *
* * *
Third, and not least significant, recordkeeping, reporting, and disclosure requirements are an essential means of gathering the data necessary to detect violations of the contribution limitations described above.
Buckley I at 66-68.
 {¶ 43} In Buckley II, the court looked to these same governmental interests when reviewing Colorado's requirements for disclosures relating to the circulation of petitions. The Supreme Court found invalid Colorado's compelled disclosure of the name and address of each paid circulator and the amount of money paid and owed to each circulator each month, but upheld the compelled disclosure of the names of petition proponents and the proposed ballot measures for which paid circulators were engaged. In upholding the latter provisions, the court found that the "[d]isclosure of the names of initiative sponsors, and of the amounts they have spent gathering support for their initiatives, responds to" the state's substantial interest in providing a "control or check on domination of the initiative process by affluent special interest groups." Buckley II at 202-203.
 {¶ 44} Pursuant to Buckley II, appellants acknowledge the state's interest in providing information to the public about the financial support behind an initiative proposal. They argue, however, that the state's interests in informing voters about who has proposed a measure and who has provided funds for its circulation, can only be met by requiring the disclosure of the name of the circulator's "payor," i.e., the source of the funds used to sponsor the petition effort, not the source of the circulator's wages. They do not question the constitutionality of former R.C. 3519.05, which at the relevant time required any person "soliciting" signatures on a petition to identify the amount "the solicitor has received or expects to receive" as "consideration for services in soliciting signatures to this petition." Baldwin's Ohio Revised Code Annot. (2006 Supp.). Commonly referred to as the "payor" provision, this disclosure appeared on the front of the part-petition form and was highly visible to persons being asked to sign the petition. In In reProtest of Brooks, 155 Ohio App.3d 370, 2003-Ohio-6348, the Third District Court of Appeals found the payor provision to be constitutional, and the constitutionality of that provision is not before this court.
 {¶ 45} In contrast to the "payor" disclosure, the "person employing" disclosure required by R.C. 3501.38(E)(1) is found on the back of the part-petition, at the bottom of the last page. The disclosure need not be completed until after a circulator has completed his or her circulation of the part-petition. Therefore, the purpose of the employer disclosure is not to inform a potential signer about the financial support for the petition effort. Rather, the purpose of the employer disclosure is to inform election officials about the entity that hired the circulator. As we noted previously, this type of disclosure makes sense given the legislature's intent to curb fraud and dishonesty in the petition process, particularly as it relates to business entities that pay circulators on a per-signature basis. See 2006 Ohio Atty.Gen.Ops. No. 2006-004; Blankenship.
 {¶ 46} The United States Supreme Court has determined that states have a substantial interest "in regulating the ballot-initiative process * * * to deter fraud and diminish corruption." Buckley II at 204-205. In addition, the court has found that "recordkeeping, reporting, and disclosure requirements are an essential means of gathering the data necessary to detect violations of the contribution limitations[.]" Buckley I at 67-68. Recordkeeping, reporting, and disclosure requirements are also an essential means of gathering the data necessary to detect fraud and abuse in the petition process. Specifically, requiring the disclosure of the person hiring and paying a circulator for collecting signatures is a direct way of gathering information necessary to deter fraud, diminish corruption, and investigate potential abuse by a circulator or the entity that paid the circulator to gather signatures. Thus, this disclosure requirement serves a substantial government interest.
 {¶ 47} For these reasons, we conclude that the "person employing" disclosure requirement, "as a general matter, directly serve[s] substantial government interests. In determining whether these interests are sufficient to justify the requirements we must look to the extent of the burden that they place on individual rights." Buckley I at 68. To do so, however, we need evidence of a burden upon individual rights, and appellants have provided none.
 {¶ 48} To be clear, appellants do not argue that compelled disclosure of "the person employing" circulators is unconstitutional on its face. They do not argue that requiring any circulator to disclose his or her employer is unconstitutional, nor do they argue that requiring the affected circulators to disclose ACS as the person employing them is unconstitutional. Rather, they argue that requiring them to disclose an entity other than ACS as the person employing them is unconstitutional. We have already rejected appellants' suggestion that the trial court's interpretation would require volunteer, rather than paid, circulators. Appellants present no other evidence of how or whether requiring the disclosure of an entity other than ACS impacts First Amendment guarantees.
 {¶ 49} Appellants have not, for example, presented evidence that disclosing the entity that directly hires and pays the affected circulators would reduce the number of persons available to circulate petitions. Cf. Buckley II at 193 ("[b]eyond question, Colorado's registration requirement drastically reduces the number of persons, both volunteer and paid, available to circulate petitions"). Nor have appellants presented evidence that requiring the disclosure of an entity other than ACS inhibits circulators. Cf. id., at 198 (citing evidence that Colorado's badge requirement inhibited participation in the petition process because circulators feared harassment, recrimination, and retaliation). As the trial court concluded: "Intervenors present little to no evidence or arguments to show why or how R.C. 3501.38(E)(1) is unconstitutional."
 {¶ 50} In order for the trial court to determine that R.C.3501.38(E)(1) is unconstitutional as applied to appellants, appellants had to present evidence of an unconstitutional encroachment. In the absence of such evidence, appellants did not meet their burden. Therefore, we overrule appellants' third assignment of error.
 {¶ 51} Having overruled appellants' first, second, and third assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas, and we sua sponte lift the stay previously imposed upon that judgment.
Judgment affirmed.
Brown and Sadler, JJ., concur.