[Cite as *Kosut v. First Energy*, 2013-Ohio-2876.]

STATE OF OHIO, JEFFERSON COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| AMBER KOSUT, | ) | |
| | ) | |
| PLAINTIFF-APPELLANT, | ) | |
| | ) | CASE NO. 12 JE 8 |
| V. | ) | |
| | ) | OPINION |
| FIRST ENERGY CORP., ET AL., | ) | |
| | ) | |
| DEFENDANTS-APPELLEES. | ) | |

CHARACTER OF PROCEEDINGS:     Civil Appeal from Court of Common
                              Pleas of Jefferson County, Ohio
                              Case No. 10CV290

JUDGMENT:                     Affirmed in part
                              Reversed and remanded in part

APPEARANCES:
For Plaintiff-Appellant       Attorney Michael A. Adams
                              Attorney Christopher J. Wallace
                              Attorney Raymond A. Hinerman
                              P.O. Box 2465
                              Weirton, WV 26062

For Defendants-Appellees      Attorney Samuel N. Lillard
                              Attorney Anthony D. Dick
                              21 East State St., 17th Floor
                              Columbus, Ohio 43215

JUDGES:

Hon. Gene Donofrio
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

Dated: June 28, 2013

DONOFRIO, J.

{¶0} Plaintiff-appellant, Amber Kosut, appeals from Jefferson County Common Pleas Court judgments granting summary judgment in favor of defendant-appellee, Harsco Corporation, on appellant's retaliation claim and granting summary judgment in favor of defendant-appellee, FirstEnergy Corporation, on appellant's claims for hostile work environment, sexual harassment, and disparate treatment based on sex.

{¶1} Kosut is a carpenter with Carpenter's Local Union 186. From December 30, 2009, through February 12, 2010, Kosut's job assignment was for Harsco, formerly known as Patent. Harsco was erecting and dismantling scaffolding at the W.H. Sammis Power Plant. The Sammis Plant is owned and operated by FirstEnergy. At the time, Bechtel Corporation was under contract with FirstEnergy to act as the lead engineer on a major upgrade project at the Sammis Plant.

{¶2} During her six weeks working for Harsco at the Sammis Plant, Kosut alleged numerous incidents of sexual harassment. Kosut claimed that she was subjected to looking at pornographic images in magazines, posters, and on cell phones. She claimed that male co-workers often made sexual remarks towards her. She claimed that some male co-workers inquired about her bathroom habits. She claimed that during a particular safety training meeting put on by Bechtel the instructor continuously used offensive language. And she claimed the FirstEnergy security guards frequently touched her inappropriately when she passed through the security checkpoint.

{¶3} Kosut also alleged that she was harassed by a male worker named Larry Dowdle who did not like having a female carpenter on the job. She claimed that during her time at the Sammis Plant, Dowdle hit her with a door, tried to run her off the road with his forklift, "nipped" at her legs with his forklift, and threatened her and her family's lives.

{¶4} According to Kosut, on February 12, 2010, a co-worker named Rick Scott informed her that Dowdle was making threats to find out where she lived, that Scott was scared for her life, and that Dowdle wanted to cause her harm and get her

fired. Kosut stated that Scott gave her the phone number to a Harsco hotline to report the harassment. Kosut called the hotline and made what was supposed to be an anonymous complaint.

**{¶5}** Later that day, Kosut's employment with Harsco ended. Kosut claims she was fired due to her complaints. Harsco states she was laid off because the job was winding down.

**{¶6}** On May 18, 2010, Kosut filed a sexual discrimination/sexual harassment complaint against Harsco, Bechtel, FirstEnergy, Chris Baker, Larry Dowdle, John Good, Joe Stiller, and Jim Hamrock.[1]

**{¶7}** FirstEnergy filed a motion for summary judgment asserting, among other things, that it was not Kosut's employer and, therefore, could not be liable on Kosut's claims. Harsco also filed a motion for summary judgment asserting, among other things, that Kosut could not make a prima facie case of disparate treatment based on sex, that Harsco had legitimate, non-discriminatory reasons for Kosut's lay-off, and that Kosut could not establish the elements of a retaliation claim. Kosut submitted briefs in opposition.

**{¶8}** The trial court considered the motions along with several depositions and affidavits.

**{¶9}** As to Kosut's retaliation claim against Harsco, the trial court found the following. Kosut was a Harsco employee from December 20, 2009, until February 12, 2010, when she was laid off. Kosut was hired out of the Carpenter's Union Hall along with other union members for the project at the Sammis Plant. Kosut failed to present any evidence of her retaliation claim. She failed to present evidence of any causal connection between her layoff and any protected activity.

**{¶10}** And as to Kosut's claims against FirstEnergy, the court made the following findings. Kosut was not an employee of FirstEnergy. FirstEnergy had no control over Kosut's wages, hiring, laying off, work assignments, or supervision.

---

1 This appeal deals only with Harsco and FirstEnergy. Therefore, we will only provide the relevant history as it relates to these two defendants.

Kosut presented no evidence to create an issue of fact that she might have been a FirstEnergy employee. Kosut presented no evidence that FirstEnergy knew of the complained of conduct.

**{¶11}** Thus, the trial court granted partial summary judgment to Harsco on Kosut's retaliation claim and intentional infliction of emotional distress claim. And it granted summary judgment in favor of FirstEnergy and dismissed the complaint against it. Kosut subsequently dismissed her claims against Baker, Dowdle, and Good.

**{¶12}** Kosut filed a timely notice of appeal on April 20, 2012.

**{¶13}** Before proceeding to the merits, we must address a preliminary issue. Harsco asserts this court lacks jurisdiction to hear Kosut's appeal against it.

**{¶14}** After the trial court ruled on the summary judgment motions and prior to trial, Kosut filed notices of voluntary dismissal. She filed one notice advising that she was voluntarily dismissing her claims against Baker, Good, and Dowdle without prejudice. She filed another notice stating that she was voluntarily dismissing "any and all remaining claims against the Defendant, Harsco Corporation" without prejudice.

**{¶15}** Harsco now argues that by filing the voluntary dismissal, Kosut dismissed all claims against it, including the claims the trial court ruled on in summary judgment. Therefore, it asserts we are without jurisdiction to hear this appeal as to it.

**{¶16}** Pursuant to Civ.R. 41(A), "a plaintiff, without order of court, may dismiss *all* claims asserted by that plaintiff against a defendant." (Emphasis added.) Civ.R. 41(A) does not allow for a plaintiff to dismiss a portion of the claims against a defendant. *Pattison v. W.W. Granger, Inc.*, 120 Ohio St.3d 142, 2008-Ohio-5276, 897 N.E.2d 126, ¶18. The rule applies to discrete parties, not discrete causes of action. *Id.*

**{¶17}** Pursuant to Civ.R. 54(B), an order is not appealable if "more than one claim for relief is presented in an action" and the order only enters "judgment as to one or more but fewer than all of the claims" unless the trial court expressly

determines "that there is no just reason for delay." *Litva v. Richmond*, 172 Ohio App.3d 349, 2007-Ohio-3499, 874 N.E.2d 1243, ¶45 (7th Dist.).

**{¶18}** In support of its position, Harsco relies on *Stohlman v. Stall*, 8th Dist. No. 84353, 2004-Ohio-4763. In *Stohlman*, the plaintiffs filed defamation claims against six defendants. The trial court granted summary judgment to four of the defendants. Prior to trial, the plaintiffs dismissed their complaint in its entirety. They then filed an appeal as to the grant of summary judgment to three of the defendants. The Eighth District dismissed the appeal for lack of jurisdiction reasoning that the trial court had failed to include the Civ.R. 54(B) language of "no just reason for delay" in its entry granting summary judgment and the plaintiffs' dismissal of all claims against all defendants rendered the trial court's order a nullity. On the plaintiffs' motion, the trial court subsequently amended its summary judgment entry to include the Civ.R. 54(B) language. The plaintiffs once again appealed.

**{¶19}** But the Eighth District once again concluded it was without jurisdiction to hear the appeal. It reasoned that the trial court had no authority to enter the second summary judgment entry that included the Civ.R. 54(B) language because the entire case had already been dismissed. *Id*. at ¶5. The court noted that once the plaintiffs dismissed all of their claims the case was completely terminated and there was no case or controversy pending in the trial court. *Id*.

**{¶20}** This case, however, is distinguishable from *Stohlman*. In the present case, the trial court's judgment entry granting partial summary judgment to Harsco on Kosut's claims for retaliation and intentional infliction of emotional distress contained the Civ.R. 54(B) language "THERE IS NO JUST CAUSE FOR DELAY."

**{¶21}** The Ohio Supreme Court ruled on this issue in *Pattison*, 120 Ohio St.3d 142, ¶1, and held:

> [W]hen a plaintiff has asserted multiple claims against one defendant, and some of those claims have been ruled upon *but not converted into a final order through Civ.R. 54(B)*, the plaintiff may not create a final order by voluntarily dismissing pursuant to Civ.R. 41(A) the remaining

claims against the same defendant.

(Emphasis added.)

{¶22} Thus, although not specifically stated by the Court, as long as the trial court has included the appropriate Civ.R. 54(B) language in the judgment entry from which the appeal is taken, the fact that the plaintiff may have tried to voluntarily dismiss some but not all claims against a defendant does not affect the final, appealable order that the trial court created.

{¶23} The Fourth District applied *Pattison* in *Ray v. Wal-Mart Store, Inc.*, 4th Dist. No. 10CA27, 2011-Ohio-5142. In that case, the plaintiffs filed a two-count complaint alleging negligence and spoliation of evidence. The trial court granted summary judgment in favor of the defendant on the negligence count. The plaintiffs then filed a notice of partial dismissal purporting to dismiss the spoliation claim. Afterwards, the plaintiffs filed a notice of appeal from the summary judgment.

{¶24} The Fourth District found that it lacked jurisdiction to hear the appeal. It reasoned that a plaintiff cannot use Civ.R. 41(A) to voluntarily dismiss claims yet to be decided in the trial court in order to create a final order on the claims the court has already ruled on. *Id.* at ¶2. And it noted that the summary judgment entry did not include the Civ.R. 54(B) language. *Id.* at ¶15. The court, relying on *Pattison*, found that the plaintiffs could not dismiss their remaining spoliation claim through a Civ.R. 41(A) voluntary dismissal. *Id.* It stated that on remand, the plaintiffs could either pursue their spoliation claim or move to amend their complaint. *Id.* at ¶16.

{¶25} Thus, the Fourth District determined that because the plaintiffs attempted to dismiss only one count of a two-count complaint, the attempted dismissal was not effective. Other courts have likewise found that a plaintiff's attempt to dismiss some but not all claims against a defendant is a nullity. See, *Savage v. Cody-Zeigler, Inc.*, 4th Dist. No. 06CA5, 2006-Ohio-2760; *Kildow v. Home Town Improvements*, 5th Dist. No. CT2001-0057, 2002-Ohio-3824.

{¶26} Applying the above law to the case at hand, because Kosut attempted to dismiss all "remaining" claims against Harsco, she attempted to dismiss some, but

not all, of her claims against Harsco. Hence, her Civ.R. 41(A) attempt was a nullity. Therefore, all of Kosut's claims against Harsco are still viable. Furthermore, because the trial court included the Civ.R. 54(B) language in its judgment entry granting summary judgment to Harsco on Kosut's retaliation and intentional infliction of emotional distress claims, this is a final, appealable order. Therefore, we have jurisdiction in this case over the claims relating to Harsco.

{¶27} Moving onto the merits, Kosut raises two assignments of error, both alleging that summary judgment was not proper. Thus, the same standard of review applies to both assignments of error.

{¶28} In reviewing a trial court's decision on a summary judgment motion, appellate courts apply a de novo standard of review. *Cole v. Am. Industries & Resources Corp.*, 128 Ohio App.3d 546, 552, 715 N.E.2d 1179 (7th Dist.1998). Thus, we shall apply the same test as the trial court in determining whether summary judgment was proper. Civ.R. 56(C) provides that the trial court shall render summary judgment if no genuine issue of material fact exists and when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. *State ex rel. Parsons v. Flemming*, 68 Ohio St.3d 509, 511, 628 N.E.2d 1377 (1994). A "material fact" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.*, 104 Ohio App.3d 598, 603, 662 N.E.2d 1088 (8th Dist.1995), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

{¶29} Kosut's first assignment of error states:

THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT, AMBER KOSUT, IN GRANTING SUMMARY JUDGMENT IN FAVOR OF APPELLEE, HARSCO CORPORATION, ON APPELLANT'S RETALIATORY DISCHARGE CLAIM.

{¶30} Kosut argues the trial court should not have granted summary judgment

to Harsco on her retaliatory discharge claim.  She claims that genuine issues of material fact exist as to the five key elements.

**{¶31}** First, Kosut claims a question of fact exists as to whether she engaged in a protected activity.  She claims that she complained about sexual harassment, which is a protected activity.  She states that she complained about being exposed to pornography that objectifies women; about being groped while going through a security checkpoint; about being questioned about her bathroom habits; and about hostility demonstrated against her by Dowdle, who had problems with a female being in a male-dominated workplace.

**{¶32}** Second, Kosut claims a question of fact exists as to whether Harsco was aware that she had engaged in a protected activity.  She states that she complained to Harsco supervisor John Good about the pornography, obscene language used in a safety meeting, and Dowdle's hostile actions.  She further states that Tim Rader forwarded some of her complaints to Good and to Jim Bane.

**{¶33}** Third, Kosut claims a question of fact exists as to whether adverse action was taken against her.  She states that Harsco terminated her or laid her off and that this occurred in close proximity to her complaints.

**{¶34}** Fourth, Kosut claims a question of fact exists as to whether there is a causal connection between her complaints of sexual harassment and her termination.  She asserts that she was laid off within one hour of reporting sexual harassment on what was meant to be an anonymous hotline.  She points out that based on her "anonymous" complaint, Harsco could have easily determined who she was because she referred to herself as a female (she was one of very few females working for Harsco and the only female carpenter), she referred to her supervisor by name, she referred to her prior complaint about the pornography, and she referred to being hit with a door by Dowdle.

**{¶35}** Finally, Kosut claims a question of fact exists as to whether Harsco's stated reasons for ending her employment were a pretext.  She claims that Harsco's explanation of "lack of work" was a pretext.  She points to Rader's statements that

Harsco hired additional carpenters within days of laying off Kosut and to Good's representations to her that she would be on the Sammis job for a year or two.

{¶36} First, we must address appellees' claim that Kosut failed to raise these arguments in the trial court and, therefore, she has waived them on appeal. While she may not have made the identical arguments she now raises, appellant did raise a retaliation claim in the trial court. In "Plaintiff's Combined Response to Motions for Summary Judgment Filed on Behalf of the Three Corporate Defendants and Individual Defendants, Except for Larry Dowdle Who Has Filed No Such Motion," Kosut cited to numerous excerpts from her deposition. These deposition excerpts contained her statements that: she complained to Harsco employees about sexual harassment, including co-workers, supervisors, and crew leaders; she most recently complained nine times and Harsco would not allow her to put her complaints in writing until her tenth complaint; she was fired, not laid off; there were never any complaints about her job performance or attendance; she believes she was fired because she was speaking up for herself as a female in a male-dominated area; the easiest way to shut her up was to fire her; and approximately one hour after she called in a "so called anonymous report," she was fired. (Combined Response, p. 16, 17, 18, 24, 25, 26). And in her Combined Response, Kosut alleged that Harsco terminated her on the very day she made substantial complaints about sexual harassment. (Combined Response, p. 41). These statements were sufficient to preserve her argument on appeal.

{¶37} Pursuant to R.C. 4112.02(I), it is an unlawful discriminatory practice for any person to discriminate against any other person because that person has opposed an unlawful discriminatory practice set out in the statute. One such discriminatory practice is for an employer to discharge an employee based on sex without just cause. R.C. 4112.02(A).

{¶38} To prove a claim for retaliation, the employee must demonstrate: (1) he or she engaged in a protected activity; (2) the employer was aware that the employee had engaged in the protected activity; (3) the employer took an adverse employment

action against the employee; and (4) there is a causal connection between the protected activity and adverse action. *Greer-Burger v. Temesi*, 169 Ohio St.3d 324, 2007-Ohio-6442, 879 N.E.2d 174, ¶13.

**{¶39}** Once the employee has established a prima facie case, the burden shifts to the employer to "'articulate a legitimate, nondiscriminatory reason'" for its actions. *Id.* at ¶14, quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). If the employer articulates such a reason, the burden shifts back to the employee to demonstrate "'that the proffered reason was not the true reason for the employment decision.'" *Id.*, quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

**{¶40}** In this case, the trial court found that Kosut failed to provide any evidence of her retaliation claim. It stated that she provided no evidence of a causal connection between her layoff and any protected activity or any evidence that she was "blackballed" from employment. The court noted that Kosut was hired by other employers shortly after her layoff.

**{¶41}** We must examine each of the retaliation elements and the evidence presented to determine if any genuine issues of material fact exist.

**{¶42}** Kosut offered evidence in support of the first element that she engaged in a protected work activity. In her deposition, she offered numerous examples of times she complained about sexual harassment in the workplace.

**{¶43}** For instance, Kosut stated that there was a large amount of pornography posted in the "break shanty." (Kosut Dep. Vol.1, Tr. 161-164). She stated that at first she did not complain about it, but eventually she verbally complained to numerous people. (Kosut Dep. Vol. 1, Tr. 171-172). The pornography was eventually taken down. (Kosut Dep. Vol.1, Tr. 173). The pornography in the shanty apparently belonged to Dowdle and an incident occurred where Kosut stated that Dowdle threw a door and hit her with it. (Kosut Dep. Vol. 1, Tr. 145-150). At the time of the incident, Kosut complained to, among others, Harsco supervisor John

Good. (Kosut Dep. Vol. 1, Tr. 151-152). However, Good denied that Kosut brought this incident to his attention until after she was laid off. (Good Aff. ¶11).

**{¶44}** Another example Kosut gave was a training session put on by Bechtel. She stated that the instructor of the class used offensive language throughout the training. (Kosut Dep. Vol.1, Tr. 235). She complained to Jim Bain, Tim Rader, and Chris Baker. (Kosut Dep. Vol.1, Tr. 236, 238). They forwarded her complaint to Good. (Good Aff. ¶9).

**{¶45}** And on the day her employment with Harsco ended, Kosut stated that Rick Scott approached her and told her that he was scared for her life. (Kosut Dep. Vol.1, Tr. 112). He told her to stay clear of Larry Dowdle because Dowdle wanted to cause harm to her family and to get her fired. (Kosut Dep. Vol.1, Tr. 112). Scott gave Kosut a number to a Harsco hotline to call. (Kosut Dep. Vol.1, Tr. 112-113). Kosut called the hotline and reported the situation. (Kosut Dep. Vol.1, Tr. 113). She stated that she told the person that she spoke to that someone was trying to kill her and her family, trying to take her job away, and that he had already attacked her in some ways. (Kosut Dep. Vol.1, Tr. 116). She also complained about offensive language in the workplace. (Kosut Dep. Vol.1, Tr. 230).

**{¶46}** As to the second element, Kosut's complaint to the Harsco hot line raises a question of fact as to whether Harsco was aware of her complaints about Dowdle's treatment of her and the offensive language at work. Additionally, her previous complaints of sexual harassment to other Harsco workers may also have put Harsco on notice of her complaint. And her complaint to Harsco supervisor John Good about the pornography in the break shanty and Dowdle hitting her with a door may also have put Harsco on notice.

**{¶47}** As to the third element, there is no dispute that Harsco took an adverse employment action against Kosut. Harsco laid her off. (Good Aff. ¶18).

**{¶48}** As to the fourth element, there exists a genuine issue of material fact as to whether there was a causal connection between Kosut's complaints and her layoff.

**{¶49}** Kosut made the call reporting her fear of Dowdle to the Harsco hotline

after lunch on February 12, 2010. (Kosut Dep. Vol.1, Tr. 112-113). After making the call to the Harsco hotline, Kosut returned to her duties at work. (Kosut Dep. Vol.1, Tr.116). About an hour before her shift was over, Kosut stated she was fired. (Kosut Dep. Vol.1, Tr. 116).

{¶50} Good stated that Kosut was laid off with another male employee due to the wind-down of work at the Sammis Plant. (Good Aff. ¶18). He stated that the Harsco employees were phased out by layoff until the project was completed on June 10, 2010. (Good Aff. ¶18). Amanda King, a senior human resources manager for Harsco, also stated that Kosut was laid off due to "a standard downturn in the workload" along with a male employee. (King Aff. ¶11, 12). King also averred that Kosut did not place her call to the Harsco hotline until after she was informed that she was laid off. (King Aff. ¶17).

{¶51} King attached a copy of the Ethics Compliance Report that was generated from Kosut's call to the hotline. (King Aff. Ex. 2). The report indicated the time of Kosut's initial call was 12:26 p.m. During this call, the caller (who was supposed to be anonymous) reported that an operator known as "Mo" called her over to inquire if she had been in "his" temporary shelter area. The caller reported that she had been inside to get gloves and water. "Mo" then slammed a door in her face. Numerous people ran to check on the caller. The caller was told that "Mo" was upset with her because he thought she had moved some pornographic material from his shelter area. The caller filed a complaint with her union steward. The report then states that the caller called back at 1:19 p.m. to report that "Mo's" real name was Larry Dowdle and that he had stated that he wished to see her dead. The report stated that the caller was being terminated while she was making this second call.

{¶52} This court has noted:

> Close temporal proximity between the employer's knowledge of the protected activity and the adverse employment action alone may be significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation. *Clark County*

*Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (noting that some cases have "accept[ed] mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality" but that they have only done so when the temporal proximity is "very close"); *Payton v. Receivables Outsourcing, Inc.*, 163 Ohio App.3d 722, 2005-Ohio-4987 (two day interval); *Thatcher v. Goodwill Industries of Akron* (1997), 117 Ohio App.3d 525, 535, 690 N.E.2d 1320 (three week interval).

*Bahar v. Youngstown*, 7th Dist. No. 09-MA-55, 2011-Ohio-1000, ¶7.

**{¶53}** In this case, construing the facts most favorably to Kosut, as we are required to do, it appears that Harsco laid her off within one hour of her making her complaint on the Harsco hotline. The temporal proximity could not be much closer. Furthermore, there was some evidence that Harsco was aware, through supervisor Good, that Kosut had lodged various other sexual harassment complaints including the pornography in the break shanty and the offensive language used at the Bechtel training session. Thus, a genuine issue of material fact exists as to whether a causal connection exists between Kosut's protected complaints and her layoff.

**{¶54}** Additionally, Harsco put forth evidence of a legitimate, nondiscriminatory reason for laying off Kosut. Good and King both averred that Kosut's layoff was due to the winding down of the Sammis project, which was completed in June 2010. A genuine issue of fact appears to exist as to whether this reason was the true reason for the layoff. Kosut stated that when Harsco initially hired her, Good told her that she would be on the Sammis job for one to two years. (Kosut Dep. Tr. 101). And Tim Rader, another union carpenter and Kosut's fiancé, stated that within a week of Kosut's layoff, Harsco hired approximately ten additional carpenters to complete the work. (Rader Dep. Tr. 172). Thus, the evidence shows that there is a genuine issue of material fact as to whether Harsco's reason for Kosut's layoff was simply a pretext.

**{¶55}** In sum, Kosut presented sufficient evidence to create genuine issues of material fact as to whether Harsco was aware of her complaints of sexual harassment prior to her layoff, whether there was a causal connection between her complaints and her layoff, and whether Harsco's stated reason for her layoff was merely a pretext. Therefore, the trial court erred in granting summary judgment in favor of Harsco on Kosut's retaliation claim.

**{¶56}** Accordingly, Kosut's first assignment of error has merit.

**{¶57}** Kosut's second assignment of error states:

THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT, AMBER KOSUT, IN GRANTING SUMMARY JUDGMENT TO THE DEFENDANT FIRSTENERGY CORPORATION, ET AL ON THE BASIS THAT FIRST ENERGY WAS NOT THE APPELLANT'S EMPLOYER.

**{¶58}** Here Kosut contends the trial court erred in granting summary judgment to FirstEnergy on the sole basis that FirstEnergy was not her employer. She contends that FirstEnergy was acting in Harsco's interest. She notes that FirstEnergy hired Harsco, gave Harsco permission to work at its facility, paid Harsco for its services, provided Harsco facilities for its employees, and provided security for Harsco's employees and equipment. Thus, Kosut contends FirstEnergy was one of her employers.

**{¶59}** Kosut further argues that she presented evidence of sexual harassment as to FirstEnergy. In support she points to her testimony that she was frequently groped by FirstEnergy's security guards when entering the plant and that she complained about the pornography present on a daily basis in the shanty and break rooms. Kosut claims that these two examples of "prolonged harassing activity" raise a question of fact as to whether FirstEnergy should have known that Kosut's coworkers or third parties were engaging in harassing behavior.

**{¶60}** Once again, appellees assert that Kosut failed to raise these arguments

in the trial court and, therefore, we must not consider them. But Kosut did raise an argument in "Plaintiff's Combined Response to Motions for Summary Judgment Filed on Behalf of the Three Corporate Defendants and Individual Defendants, Except for Larry Dowdle Who Has Filed No Such Motion" that FirstEnergy (along with Harsco and Bechtel) was her employer as defined by R.C. 4112.01(A). (Combined Response, p. 8-9). Later in her brief she cited to her deposition where she stated she worked for FirstEnergy "because anytime she is on their property she is working for them" and that she worked for FirstEnergy, Bechtel, and Harsco. (Combined Response, p. 13, 18). Thus, she has not waived this issue on appeal.

**{¶61}** R.C. 4112.02(A) prohibits an employer from engaging in sexual discrimination against an employee. *Peterson v. Buckeye Steel Casings*, 133 Ohio App.3d 715, 722, 729 N.E.2d 813 (10th Dist.1999). R.C. 4112.01(A)(2) defines "employer" as including "any person employing four or more persons within the state, and any person acting directly or indirectly in the interest of an employer." R.C. 4112.01(A)(3) defines "employee" as "an individual employed by any employer."

**{¶62}** In this case, the trial court found that Kosut was not an employee of FirstEnergy and, therefore, dismissed her claims against FirstEnergy.

**{¶63}** In support of their summary judgment motion, appellees submitted James Hamrock's affidavit. Hamrock was employed by FirstEnergy as the manager of site construction at the Sammis Plant during the relevant time. (Hamrock Aff. ¶5). Hamrock averred that in 2005, FirstEnergy began a large scale project to install air pollution equipment at the Sammis Plant. (Hamrock Aff. ¶7). The upgrades were designed and managed by Bechtel and one other company. (Hamrock Aff. ¶7). The upgrades were completed in July 2010. (Hamrock Aff. ¶8). In order to complete the upgrades, FirstEnergy engaged the services of numerous contractors, one of which was Harsco (formerly known as Patent Construction Systems). (Hamrock Aff. ¶9). Harsco was to provide scaffolding services at the Sammis Plant. (Hamrock Aff. ¶9).

**{¶64}** Hamrock averred that Harsco's employees were permitted to enter the Sammis Plant premises to perform the contracted services. (Hamrock Aff. ¶10).

However, Harsco's employees were not hired, paid, supervised, directed, or terminated by FirstEnergy. (Hamrock Aff. ¶10). Hamrock specifically stated that at no time were Harsco's employees also employees of FirstEnergy. (Hamrock Aff. ¶10).

{¶65} More specifically, Hamrock averred that FirstEnergy never paid Kosut any wages. (Hamrock Aff. ¶12). Kosut never appeared on FirstEnergy's payroll. (Hamrock Aff. ¶12). FirstEnergy has never issued a W-2 form to Kosut. (Hamrock Aff. ¶12). FirstEnergy was not involved in Kosut's hire or lay-off. (Hamrock Aff. ¶12). And FirstEnergy did not actively control Kosut's day-to-day work in any way, nor was it involved in her direct supervision. (Hamrock Aff. ¶12).

{¶66} Appellees also submitted Amanda King's affidavit. As stated, King is employed by Harsco as a human resources manager. King averred that Harsco is "completely separate from FirstEnergy." (King Aff. ¶29). She further stated that Kosut was employed solely by Harsco during the relevant time. (King Aff. ¶29). She stated that no other company, including FirstEnergy, had the ability to control or direct Kosut's work at the Sammis Plant. (King Aff. ¶29).

{¶67} Kosut offered only her deposition testimony. When asked if she ever worked directly for FirstEnergy, Kosut replied, "[a]ny time I'm on their property, I'm working for FirstEnergy." (Kosut Dep. Vol. 1, Tr. 31-32). She claimed that when she was working for Harsco, she was working for FirstEnergy. (Kosut Dep. Vol. 1, Tr. 110). But she stated that it was her union who actually hired her. (Kosut Dep. Vol. 1, Tr. 110). Kosut expressed that upon her initial hire, she was issued a FirstEnergy "swipe card" and she had to sign off on a lot of FirstEnergy paperwork. (Kosut Dep. Vol. 1, Tr. 207, 208). And while she claimed Hamrock was one of her immediate supervisors, she stated that she never met him. (Kosut Dep. Vol. 2, Tr. 143-144). She also claimed that Hamrock terminated her; however, she said that she never spoke to him and never received a message from him. (Kosut Dep. Vol. 2, Tr. 144).

{¶68} Kosut also stated that her physical paycheck was from Patent/Harsco. (Kosut Dep. Vol. 2, Tr. 62). When asked if she ever received a paycheck from

FirstEnergy, Kosut stated that her checks had the "P" letterhead on them. (Kosut Dep. Vol. 2, Tr. 149). However, she thought that FirstEnergy gave Patent the money to pay her. (Kosut Dep. Vol. 2, Tr. 149). And she said that her W-2 was to come from Patent/Harsco. (Kosut Dep. Vol. 2, Tr. 151). Kosut also claimed that Jim Bane, the union steward, was the person who actually informed her that she was laid off. (Kosut Dep. Vol. 2, Tr. 153).

{¶69} Based on the above evidence, Kosut was not a FirstEnergy employee. Kosut offered some statements that she believed she was a FirstEnergy employee any time she worked on FirstEnergy property. But her claims that she was a FirstEnergy employee were not based on any facts. Kosut stated that her paycheck was from Patent/Harsco and her W-2 was from Patent/Harsco. Furthermore, although she stated that Hamrock fired her, she admitted that she never met him or received a message from him. And she stated that Bane was the one who told her she was laid off.

{¶70} Moreover, Hamrock unequivocally stated that Kosut was not a FirstEnergy employee. He based his statement on the facts that FirstEnergy did not pay Kosut, did not issue her a W-2, did not hire her, did not fire her, did not direct her work, and did not supervise her. Additionally, King averred that Harsco's employees were not FirstEnergy employees. She stated that only Harsco had the ability to control Kosut's work at the Sammis Plant.

{¶71} Kosut's bare assertions do not create a genuine issue of fact as to whether she was a FirstEnergy employee. Other cases have reached similar conclusions.

{¶72} For instance, in a workers' compensation case, the Ohio Supreme Court found the customer of an employment agency who exercises day-to-day control over the employees is considered the employer for purposes of workers' compensation as opposed to the employment agency who hired the employees and paid their wages. *State ex rel. Stanadyne , Inc. v. Indus. Comm.*, 12 Ohio St.3d 199, 202, 466 N.E.2d 171 (1984) ("Shippers Interstate can best be described as an

employment agency which supplied qualified drivers to Stanadyne.")

**{¶73}** Moreover, in a case where members of SmokeFreeOhio were collecting signatures on petitions to get an initiative on the ballot, a protestor asserted that some of the circulators had not correctly identified their employer. *In re Protest of Evans*, 10th Dist. Nos. 06AP–539, 06AP–540, 06AP–541, 06AP–542, 06AP–543, 06AP–544, 06AP–545, 06AP–546, 06AP–547, 06AP–548, 2006-Ohio-4690. According to the protestor, some of the circulators identified their employer as the American Cancer Society (ACS) instead of the professional petition-circulating company that actually employed them. *Id* at ¶20. ACS managed the SmokeFreeOhio petition effort. As such, ACS contracted with Arno Political Consultants (Arno), a professional signature-gathering company, to collect the necessary signatures. *Id.* Under the contract ACS agreed to pay Arno a certain amount per signature. *Id.* Arno then retained and paid circulators as independent contractors. *Id.* ACS did not pay the circulators directly, but it did pay Arno for the specific use of paying circulators. *Id.* ACS also directed the signature-gathering effort toward specific areas of Ohio. ACS did not train the circulators, direct or control their work, provide tax documentation to them, or pay them. *Id.* Based on these facts, the Tenth District concluded that ACS did not employ the circulators. *Id.* at ¶23.

**{¶74}** Similarly, although FirstEnergy may have provided money to Harsco to pay its employees and allowed Harsco's employees onto its property to perform work, this did not make Harsco's employees FirstEnergy's employees. Harsco was the one who directed Kosut's work activities, paid her, and issued her W-2. Thus, the trial court properly granted summary judgment to FirstEnergy.

**{¶75}** Accordingly, Kosut's second assignment of error is without merit.

**{¶76}** For the reasons stated above, the trial court's judgment is hereby affirmed as to FirstEnergy. It is reversed as to the retaliation claim against Harsco. The matter is remanded to the trial court for further proceedings on Kosut's remaining

claims against Harsco.

Waite, J., concurs.

DeGenaro, P.J., concurs in judgment only.